Good morning, Your Honors. May it please the Court, we are law students or recent graduates from the University of Arizona James E. Rogers College of Law pro bono appellate project. We are under the supervision of Dr. Willie Jordan Curtis today. We are here today on the behalf of Michael Storman to address the district court's error in dismissing his complaint. Improper decisions regarding paratransit cases cause egregious harm. Mr. Storman's ability to get medical treatment, to get vocational services, and to get rehabilitation services have been harmed. Because of the unique nature of four advocates presenting one ten-minute argument, I would like to take a couple of seconds to provide a road map of our individual arguments. My name is Jill Sosin. I will be addressing the issue of Section B paratransit trip-by-trip eligibility under the controlling regulation. Co-counsel Jill Tequilos will be addressing Section E Category 3 eligibility requirements and how the facts and allegations in Mr. Storman's complaint meet these categories and requirements. Co-counsel Sally Diggs will be discussing alternatively the district court's responsibility in allowing Mr. Storman to amend his complaint. And we will attempt to retain one minute for rebuttal by Co-counsel Mary Lafaglia. Can I ask you this question to interrupt on your thing? Can I just summarize what I think your case is and you tell me if this is right. The regulations say that somebody who's disabled has a right to trip-by-trip basically a municipal taxicab. Yes. It may be that they're not eligible for certain trips because that particular trip could be handled by the bus service even with difficulty. Yes. But other trips may be so difficult that they are, quote, prevented. And what the judge here did was throw the baby out with the bathwater and say, any and all, there's no trip whatsoever that Mr. Storman could take that he can't take on public transit, therefore he's not eligible for any trips. And that, you say, is an error because at least some trips he was eligible for. That is exactly right. That's the essence of your argument. That's the essence of the argument. And on a Motion 12b motion, the judge was wrong to throw out the entire case. Correct. All right. That's your argument. The district court erred because it failed to consider Section B under 49 CFR 37.123. And as Your Honor has pointed out, Section B applies and allows a paratransit eligible individual to have eligibility for those times when his disability actually prevents fixed route travel. How does that work? Does the disabled person call up the transit and say, send me out a paratransit because I've got one of those trips that I'm prevented on? Is that the way? How does it, as a practical matter, how is that system supposed to work? Well, the Department of Transportation, who promulgated the regulations under the ADA, in their definitive guidelines gave several alternatives for a paratransit provider. They could use a type of self-assessment so the individual could understand their own medical disability. And at those times when it was, they were impossible to use a fixed route system, they could, on 24-hour notice as usual in California, request the services. There could be other types of assessments, say an individual who has a sensitivity to temperature, who could go use a fixed route system in the summer because their sensitivity was to cold temperature. But does Sacramento actually even have any of these vans? Yes, they do. All right, so what could have happened here was Mr. Storman could call up and say, OK, it's one of those times. Send the van out tomorrow so I can go to my doctor. Yes. All right, and you're in, but he was denied that totally. Yes. All right. And what he wants to do is be on a list that would allow him to do a trip-by-trip utilization of these vans. Yes, he had the. Yeah, they're saying, call us, don't call us, we don't care, we're not coming. Exactly, he had the services under trip-by-trip eligibility or what was, he referred to as restricted paratransit eligibility from 1990 to 1998. The regulations haven't changed, the ADA hasn't changed, nor has Mr. Storman's disability improved. He has Tourette's syndrome, he's got various other vision problems, he's got attention deficit disorder, he has a fatigue syndrome, he has multiple disabilities that impact his ability to use a fixed route system. Even though nothing had changed, he was denied services. Counsel, this may be a question for one of the Jill's, I'm not sure, but where in your complaint did it indicate that you were complaining about his not being able to get it on a trip-by-trip basis, as opposed to requiring that the service be provided at all times? He referred to restricted paratransit eligibility five times in his original complaint to the district court. Again, the Sacramento Regional is a transit provider, they have to comply with regulations. They have the knowledge to understand that Section B was involved. And at this point, with the court's permission, I would like to turn the podium over to my co-counsel. Good morning. Now, Mr., I think what you're asking is where did Mr. Storman say, I'm requesting trip-by-trip eligibility because I can't do it. And the facts are that he did allege that he was eligible. The problem was that the district court wasn't directed to the portion providing for paratransit eligibility on a trip-by-trip basis. And in this case, with the pro se complainant who is not held to the same standards of pleading as an attorney, although those allegations were there in the complaint, they're very difficult to see, especially for one who isn't looking for trip-by-trip eligibility. So Mr. Storman didn't say, I am prevented from using the bus system on the following occasions, or sometimes it's so difficult that I can't make these trips. What he said was, sometimes I can't walk more than a block. Well, clearly, if you accept that, there are going to be occasions where he is going to be prevented from taking a trip. Not everywhere an individual would go are going to be, either the destination or the departure point, will be within one block from the bus stop. He said, and closed a letter with his complaint from one of his doctors that said, my office is a mile from the nearest bus stop. So clearly, in that occasion, although he doesn't say outright, I am prevented on this occasion, the facts that he alleged in the complaint would indicate that he would be, and that he would subsequently be able to prove at trial that he is, in fact, prevented. How specific must he be in his complaint to survive a motion to dismiss? Not very specific in this case, Your Honor. His complaint is to be very liberally construed. He's a pro se complaint. And in a notice pleading state, or under notice pleading, all he's required to do is put the defendant on notice of what it is that he's alleging. Now, as a transit authority, and having already been provided eligibility under trip by trip, under the trip by trip provision, RT knew that he was alleging that he was eligible, and that he had been eligible under that those services. Did he also attach some exhibits to his complaint? He attached a number of exhibits. He attached letters from his different doctors that, while they also are not attorneys and didn't know to say, Mr. Storm is prevented on this occasion, they all supported his claim that he is seriously in need of at least occasional paratransit services. He additionally attached some of the information from when he had dealt with the transit authority, and had requested the services, been denied, and had been appealed. So on a 12 v 6 motion, that would be sufficient for the judge to infer, at least, that he needed help on a trip by trip basis? Yes, we believe absolutely. And he certainly could have proved each of these things at trial, had he been given that opportunity. Now, we've been directing you by our questions. Your time is running. Is there anything specific that you didn't get to because of what we've been asking you about? No, Your Honor. I'd just like to say that the district court erred by not allowing him to do that, and that it would be a serious injustice for him not to be able to continue a trial on the merits. My co-counsel, Ms. Diggs, was going to discuss briefly the alternative reason why this court should remand, if, in fact, you are not convinced that he did state a claim. Thank you. Thank you. Good morning. In the alternative, if the court is not convinced that Mr. Storman's complaint stated sufficient legal claims, the court should grant him leave to amend his complaint. As we stated, the allegations of a complaint by a pro se litigant are held to less stringent standards than that of pleadings prepared by counsel. The court has an obligation to tell the pro se litigant of any specific deficiencies in the complaint prior to dismissing it. And this court has recognized that the pro se litigant must be given leave to amend his or her complaint unless it is obviously clear that there are deficiencies that could not be cured by any amendment. Therefore, the district court, by dismissing this complaint without giving him notice of any specific deficiencies... And there was no opportunity to amend at all? Correct. Did your client seek to amend? He did not request a specific request to amend, feeling that by virtue of requesting the restricted public or the restricted transit services and with R.T. being on notice of his situation, that he did sufficiently state a claim. But he did not specifically request, I would like to file an amended complaint. That's correct. The understanding is that a pro se litigant is not necessarily required to do that if there are these deficiencies that the court can point out. Do you have case law that says that a pro se litigant, unlike a represented litigant, need not ask to amend? There is case law about the more general proposition that the pleadings are to be construed more liberally. And we didn't specifically cite it in our brief, but there is case law, and I would need to have a little additional time to look at that specific case. So in the interest of time. If the court were to remand this for further proceedings, I'm not saying that that's what's going to happen, but hypothetically, would your team of three be there in Sacramento to represent him, or are you just here for appeal? It is beyond the scope of this project for us to represent him at that proceeding, but we could probably give a few suggestions. All right. Thank you. So with the court's permission, I'd like to reserve a minute for rebuttals. Thank you. That's right. I'm up for the challenge here. May it please the court. I'm Tim Spangler. I represent Sacramento Regional Transit. If I can hit a couple of quick points before I get into what I think is the meat and The reason that 37.123E is the critical section is because it applies the It is the eligibility standard, regardless of whether you're asking for restricted or unlimited paratransit service. There is no It is not qualitatively easier to get paratransit service because you are asking for it on a restricted basis. It is the same standard that has to apply. Is restricted the same thing as trip by trip? Yes, Your Honor. Okay. It's the same standard in the sense that I think I understand the law to be, and you can correct me if I'm wrong, that if you are prevented always, you get unrestricted. True. If you're prevented sometimes, you get trip by trip or restricted. But the standard of what constitutes prevented remains constant. Correct. What's different is that in one case it's constant and in the other case it's intermittent. Right. And I've sort of used qualitative and quantitative to make that distinction. But in other words, regardless of whether you want trip by trip or whether you want unlimited, you've got to show that you were prevented. Under trip by trip, it's on some occasions. Under unlimited, it's on all occasions. Correct. But tell me, the administrative decision that was made was that he's no longer eligible on account of not being disabled. Is that correct? No. Well, but is it true that for many years he was allowed to get trip by trip? That's correct. And so why was he taken off of that? Well, it's not in the record, but these things are not forever. In other words, if you've been deemed eligible in the past, it doesn't mean that you're going to be deemed eligible forever. My understanding is there has to be some – there's some type of renewal process. And you go through an interview with the paratransit eligibility folks, and they're the ones who make the decision. Is my understanding of the record correct that he was not renewed because he had shown that he was able to take some trips? That's not correct. He was not disallowed because he was shown able to take some trips. He was disallowed because he did not show that he met the eligibility requirement of Category 3 and that he was prevented in any trip from using a fixed route system. And I refer to this in my brief as a contrivance, and I think it really is, in that there's never been an argument on R.T.'s part that the sometimes able individual is ineligible as a matter of law from participating in paratransit. That's never been the argument. The argument is simply put that whether it's trip by trip or unlimited, he doesn't meet the criteria based on the facts that are alleged in the complaint. Does his complaint, fairly understood under Rule 8, allege a trip by trip prevention? Well, he makes reference in the complaint to – when he's referring to what he asked for from regional transit during the administrative phase as restricted paratransit service. He makes that reference in the complaint. So fairly read, he's saying that he's eligible for restricted paratransit. Right. That's what he requested below. And then, you know, putting the pieces together is – It is fairly read. That's what his complaint says. Don't we have to go past 12B6 and have you answer on the merits, and then we can get to the merits of the case as to what's true and what's not true. No, because the allegations, not only the allegations in the complaint, but the allegations that become part of the complaint by his inclusion in the complaint of these letters and myriad of exhibits, I think it's a well-settled rule of pleading that you can plead yourself right out of court. If you attach something, it becomes part of your complaint. If there's an inconsistency in the attached document, that trumps what you've said in your complaint. Here he's saying – and I think what – there's been great use on this one phrase that he says,  But when you look to the physician's records that are – the physician's reports that are submitted, it explains that as being when he gets tired, it aggravates his Tourette syndrome. It aggravates motor tics. That causes him to become a potential target of hostility or ridicule when he's riding on the bus. Two problems with that. One, it has absolutely nothing to do with his ability to walk to or from a boarding location. The fact that he gets aggravated and he's on the bus with motor tics that are exacerbated has nothing to do with coming to and from. The other thing is he never says when he talks about his ability to use the bus, he never says in his complaint, I sometimes can use the bus once or twice a week or I can only use the bus once or twice a week. He says, I use the bus once or twice a week. How much sort of cherry-picking can you do to use things out of the letters that say, we know you're not there, when there are paragraphs such as the following from Dr. Flaher, this is a March 12 letter, the second paragraph on page 12. Dr. Flaher writes, it's imperative that Mr. Stroman retain some use of the paratransit system as he cannot rely solely on the public bus services. For example, the nearest bus stop to my office is at least one mile away, which Mr. S would be forced to walk to, due to his Tourette syndrome. Such considerable physical exertion exacerbates his motor tics, renders such a long walk excessively distressing and time-consuming. Well, that may or may not be true, but that sounds as though that's a sufficient allegation that he has been prevented within the meaning of the regulations. Well, let's assume that that is true, and we have to. Yes. The physical exertion has exacerbated a motor tic, rendering such a long walk excessively distressing and time-consuming. Okay? That is certainly a difficulty. Does it prevent him? Is it so substantial that it prevents him from making a trip? And when you look at Dr. Clark's letters and the context, and there's three of them, what he says is that the reason that these long walks become excessively distressing to him is because the long walk exacerbates the motor tic, which in turn makes him a subject of ridicule. But isn't it clear that the doctor is saying it's imperative, and this is a Rule 12 motion to dismiss. We have to liberally construe everything in this pleading. That's absolutely correct. You're nitpicking it to death to try to find some way to say, well, okay, let's support what the magistrate judge did here. But the doctor is saying he can't walk a mile. It's imperative that he get trip by trip to come to see me. I'm the doctor, and I'm telling you, he needs it. And this is a motion to dismiss. Now, maybe you'll take depositions. Maybe you'll find this whole thing has been blown out of proportion and that he doesn't deserve a thing. But that would be for trial or motion for summary judgment. You got a home run at the first stage, and it looks to me like that maybe you shouldn't have gotten that home run at the first stage. Well, and the reason I respectfully disagree is because that you have to look at why, as Dr. Clark is saying, in a very conclusory fashion. Listen, that's not Rule 12. That's not Rule 12. But it's part of the motion now. I mean, this is part of the pleading. This letter is now part of the pleading. If it's inconsistent with the allegations. You have to liberally construe that pleading in his favor, not nitpick it. And that may be the case. But if you also look at the policy that when you attach something, you comply. That's true. That's true. It's part of the pleading, but it's still got to be liberally construed. Right. And the point you were heading toward is that it causes him distress, and that isn't sufficient to cause him to have to have a ride. Is that what you were saying? Correct. And the issue is, is it difficult or is it prevented? And I don't disagree that based on the allegations, there may be times when he has difficulties on the bus. But the problem with Category 3 is that it only deals with to and from a boarding location. If you're on the bus and you've got aggravated motor tics and someone may ridicule you for that, not only is that something that could happen to anybody, but it's also something that doesn't have anything to do with Category 3, to and from the boarding location. So it's boarding location or de-embarkation. Right. To and from. All right. So if he's got to walk a mile from the de-embarkation to the doctor, we've got to look at that too, don't we? I agree. But when you look at why it's aggravating for him to walk a mile, it's because it aggravates motor tics, which cause him to maybe be ridiculed while he's riding on the bus. So the actual doctor said that it's not ridicule. Maybe that's also a factor. But he says due to Tourette's Syndrome, which such considerable physical exertion exacerbates his motor tics, rendering such a long walk excessively distressing and time-consuming. He's not talking about ridicule on the bus. He's talking about how hard the long walk would be. Right. But if you look, like I'm saying, if you look at the other letters, excessively distressing refers to the distress he feels when he's on the bus, potentially with the anxiety of being ridiculed. You say that. It says rendering such a long walk, W-A-L-K. Correct. That's not talking about the bus ride. That's talking about the walk. Right. And why is the walk excessively distressing? And I'm explaining it. If you look at Dr. Clark's other letters, it explains why it is excessively distressing. And time-consuming certainly doesn't make it, doesn't prevent him from using it. It may make it more difficult. Thank you. I appreciate it. Thank you, Your Honor. Thank you, Your Honor. Yes, and I will try to keep this very short. Thank you. The issue ultimately is the meaning of prevented travel. It's a term that Mr. Storman didn't use as a pro se litigant. I think we can't really expect him to use that term. But the interpretive guidelines are very clear about what prevented travel is and is not. A case of prevented travel can be made not only where travel is literally impossible, someone cannot find the bus stop, someone cannot push a wheelchair through a foot of snow or up a steep hill, but also where the difficulties are so substantial that a reasonable person with the impairment-related condition in question would be deterred from making the trip. That is, in fact, Mr. Storman's condition. Yes. What's your response to your opponent's argument of internal contradictions in the letters that have been attached? Can, in fact, your client plead himself out of court by being too particular? It is true that the letters that he has attached become part of his complaint. I don't see that those letters have pled him out of court. Because? Because I believe those letters also show the court his disabilities. They show the court that there are times when he can and times when he can't. And more specifically, they show the court that he is dependent on public transportation and or paratransit. He doesn't have other options such as driving. And that he might be deterred because he would be distressed, and therefore he would be deterred from taking the trip to the doctor. That's correct. Thank you.
judges: Dw Nelson, W. Fletcher, Alsup